UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NUMBER LCC000277,<br><br>        Plaintiff,<br><br>        -v.-<br><br>KINSALE INSURANCE COMPANY,<br><br>        Defendant. | 24 Civ. 8602 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiff Certain Underwriters at Lloyd's, London subscribing to policy number LCC000277 ("Underwriters") brought this diversity insurance action against Defendant Kinsale Insurance Company ("Kinsale"), seeking a judgment declaring that Kinsale has a primary duty to defend and indemnify Underwriters' insureds in an underlying personal injury action, as well as reimbursement of certain costs and expenses that Underwriters has already incurred in that action. Before the Court is Kinsale's motion to compel arbitration. Because Underwriters' claims sound in equity and are not bound by the arbitration agreement in Kinsale's insurance contract, the Court denies Kinsale's motion.

**BACKGROUND**[1]

A.   **Factual Background**

On December 8, 2021, Jairo Morocho was injured by a forklift while performing work on a construction project. (Compl. ¶¶ 9, 14). A few weeks later, on January 26, 2022, Mr. Morocho filed a personal injury action in New York state court against LMV, LRC Construction, and Fuller Development Company, Inc., which are entities that allegedly "owned, directed, controlled, managed, and/or supervised" the construction project where Mr. Morocho was injured. (*Id.* ¶¶ 9, 13; *see* Horton Aff., Ex. A). In subsequent amended complaints, Mr. Morocho added Phoenix HMA, Inc. ("Phoenix"), LRC Maintenance, LLC ("LRC Maintenance"), and Fuller Marquise, LLC ("Fuller Marquise") as defendants. (Compl. ¶¶ 11, 12, 18; *see* Horton Aff., Ex. D-E). LMV, one of the numerous defendants in Mr. Morocho's state-court case, was covered by a commercial general liability policy issued by Plaintiff

---

[1]   This Opinion draws its facts from Underwriters' Complaint ("Compl." (Dkt. #1)), the well-pleaded allegations of which are taken as true for purposes of this Opinion. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009). The Court also relies, as appropriate, on Kinsale's Answer ("Answer" (Dkt. #8)); the affirmation of Lexi R. Horton in support of Kinsale's motion to compel arbitration ("Horton Aff." (Dkt. #13-1)) and the exhibits attached thereto ("Horton Aff., Ex. [ ]"); and the affirmation of Achille Alipour in opposition to Kinsale's motion to compel arbitration ("Alipour Aff." (Dkt. #17)) and the exhibit attached thereto ("Alipour Aff., Ex. 1").

For ease of reference, the Court refers to Kinsale's memorandum of law in support of its motion to compel arbitration as "Kinsale Br." (Dkt. #13-20); to Underwriters' memorandum of law in opposition as "Underwriters Opp." (Dkt. #16); and to Kinsale's memorandum of law in reply as "Kinsale Reply" (Dkt. #18).

Underwriters.  (Compl. ¶ 3).  In addition, Underwriters also considered LRC Construction to be an insured.  (*Id.* ¶ 1).

Two other defendants in the underlying action — Fuller Marquise and Phoenix — had previously executed a written purchase order for Phoenix's carpentry work that required Phoenix to obtain a commercial general liability and excess liability insurance policy and to name LMV and LRC Construction as additional insureds under that policy.  (Compl. ¶¶ 18-20; *see* Alipour Aff., Ex. 1).  The purchase order specified that the policy procured by Phoenix on behalf of the insureds would be primary and non-contributory and cover bodily injury caused by or arising from the construction work.  (Compl. ¶ 21; *see* Alipour Aff., Ex. 1 at 5 ("All [i]nsurance provided by [Phoenix] … shall be primary and non-contributory to any [i]nsurance maintained by any additional [i]nsured named herein.")).  Complying with the purchase order, Phoenix obtained insurance from Defendant Kinsale, which issued a policy effective from December 5, 2021, to December 5, 2022 (the "Kinsale Policy"), and which — as required by the purchase order and according to a certificate of insurance provided to Fuller Marquise — named LMV and LRC Construction as additional insureds.  (Compl. ¶¶ 22-23; *see* Alipour Aff., Ex. 1 at 5 (including LMV and LRC Construction as additional insureds)).  While the Kinsale Policy itself did not specifically name LMV and LRC Construction, a section of the policy explained that it covered owners, lessees, and contractors as additional

3

insureds "as required by written contract, executed prior to the start of work on the project." (Horton Aff., Ex. H at 68).

After Mr. Morocho filed his personal injury action, Underwriters twice attempted to tender the defense and indemnification of LMV and LRC Construction in that action to Kinsale on the basis that they were covered as additional insureds under the Kinsale Policy. (Compl. ¶¶ 24, 26). Both times, Kinsale refused to accept the tender. (*Id.* ¶¶ 25, 27). As a result, Underwriters participated in the underlying action on behalf of LMV and LRC Construction and incurred "substantial" attorneys' fees and costs. (*Id.* ¶ 36).

As relevant here, the Kinsale Policy, which allegedly covered LMV and LRC Construction as additional insureds, contained a binding arbitration clause. (Horton Aff., Ex. I at 3). The clause stated:

> All disputes over coverage or any rights afforded under this Policy, including whether an entity or person is a Named Insured, an Insured, an additional insured, or entitled to coverage under the Supplementary Payments provision of this Policy or the effect of any applicable statutes or common law upon the contractual obligations owed, shall be submitted to binding arbitration, which shall be the sole and exclusive means to resolve the dispute. Either party may initiate the binding arbitration.

(*Id.*).

## B.   Procedural History

On November 13, 2024, Underwriters filed a complaint in this Court against Kinsale. (Dkt. #1). Underwriters sought (i) a declaration that Kinsale has a primary and non-contributory duty to defend and indemnify LMV and

4

LRC Construction and (ii) a money judgment against Kinsale equal to the amount of attorneys' fees and costs that Underwriters has incurred in the underlying personal injury action.  (Compl. ¶¶ 28-37).  Kinsale answered on December 12, 2024, and also raised nine affirmative defenses, including that this case is "barred by policy provisions that require any dispute under the terms of the policy to be resolved by arbitration."  (Answer ¶ 29; *see generally* Answer).  A few weeks later, the parties filed a joint letter and proposed Case Management Plan, in which they agreed to conduct all fact and expert discovery within six months.  (Dkt. #9-10).  The Court entered the Case Management Plan on February 10, 2025.  (Dkt. #12).

Around the same time, in February 2025, Kinsale invoked the arbitration clause in its insurance policy and formally demanded arbitration to resolve the dispute with Underwriters.  (Horton Aff., Ex. I).  Underwriters refused to consent to arbitration.  (*Id.*, Ex. J).  Consequently, on March 10, 2025, Kinsale filed its motion to compel arbitration, along with supporting papers.  (Dkt. #13).  On April 7, 2025, Underwriters filed a memorandum of law in opposition, accompanied by an affirmation by its counsel.  (Dkt. #16-17).  And Kinsale filed its reply memorandum of law on April 21, 2025.  (Dkt. #18).  In light of the motion to compel arbitration, the parties jointly requested a 60-day extension of the discovery deadlines (Dkt. #19), which request the Court granted (Dkt. #20).  Fact discovery concluded in August 2025, and expert discovery concluded in October 2025.  (*See* Dkt. #20).

**DISCUSSION**

**A.    Applicable Law**

Under the Federal Arbitration Act (the "FAA"), a party to an arbitration agreement can petition the appropriate federal district court for an order compelling arbitration when its counterparty "fail[s], neglect[s], or refus[es] ... to arbitrate" under the terms of the agreement.  9 U.S.C. § 4.  That is because "[t]he FAA reflects 'a liberal federal policy favoring arbitration agreements,'" and it "places arbitration agreements on 'the same footing as other contracts.'" *Meyer* v. *Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (first quoting *AT&T Mobility LLC* v. *Concepcion*, 563 U.S. 333, 346 (2011); and then quoting *Schnabel* v. *Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)).  Indeed, Section 2 of the FAA provides that "[a] written provision in ... a contract ... to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]"  9 U.S.C. § 2.

In ruling on a motion to compel arbitration, a district court must evaluate two prongs that determine arbitrability: "[i] whether the parties agreed to arbitrate, and, if so, [ii] whether the scope of that agreement encompasses the claims at issue."  *Holick* v. *Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (quoting *Bank Julius Baer & Co., Ltd.* v. *Waxfield, Ltd.*, 424 F.3d 278, 281 (2d Cir. 2005), *abrogated on other grounds by, Granite Rock Co.* v. *Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010)).  The standard under which the court evaluates evidence pertaining to arbitrability is similar to that for summary

judgment — that is, the court must consider all relevant and admissible evidence and draw all reasonable inferences in favor of the non-moving party. *Meyer*, 868 F.3d at 74. "If there is an issue of fact as to the making of the agreement for arbitration, then a trial [may be] necessary." *Bensadoun* v. *Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citing 9 U.S.C. § 4).

**B.    The Court Denies Kinsale's Motion to Compel Arbitration**

**1.    Underwriters Did Not Sign an Agreement to Arbitrate**

In general, non-signatories are not bound by the arbitration agreements of others. *See, e.g., Volt Info. Scis., Inc.* v. *Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989); *United Steelworkers of Am.* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). That is because "arbitration is a matter of contract[,] and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers*, 363 U.S. at 582. Even with the FAA's liberal policy in favor of arbitration, the Second Circuit has cautioned that arbitration agreements "must not be so broadly construed as to encompass claims and parties that were not intended by the original contract." *Thomson-CSF, S.A.* v. *Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995). Here, Underwriters did not sign an arbitration agreement with Kinsale, nor was it covered as an insured by the Kinsale Policy. (*See* Underwriters Opp. 5). Kinsale acknowledges that Underwriters is a non-signatory, against which the arbitration agreement in the Kinsale Policy may not be readily enforceable under traditional theories of contract law. (*See* Kinsale Br. 6; Underwriters Opp. 5).

Nevertheless, guided by principles of contract and agency law, the Second Circuit has recognized several alternative theories for binding non-signatories to arbitration agreements. *See Thomson-CSF*, 64 F.3d at 776 (listing five theories); *MAG Portfolio Consult, GMBH* v. *Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001) (same). One of them is estoppel, which states that "a company 'knowingly exploiting [an] agreement [with an arbitration clause can be] estopped from avoiding arbitration despite having never signed the agreement.'" *MAG Portfolio Consult*, 268 F.3d at 61 (alteration in original) (quoting *Thomas-CSF*, 64 F.3d at 778). Invoking only estoppel (and none of the other theories), Kinsale claims that Underwriters is estopped from avoiding arbitration as a non-signatory because Underwriters seeks to knowingly exploit the insurance contract between Kinsale and the additional insureds, namely LMV and LRC Construction. (Kinsale Br. 6-7). This particular theory of estoppel requires that the benefits exploited by the non-signatory be direct — that is, they must "flow[ ] directly from the agreement." *MAG Portfolio Consult*, 268 F.3d at 61. "By contrast, the benefit derived from an agreement is indirect where the non[-]signatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself." *Id.* Therefore, whether Underwriters can be compelled to arbitrate under the theory of estoppel depends on whether it seeks direct benefits flowing from the Kinsale Policy.

### 2. Courts Within This Circuit Are Divided on Whether Estoppel Applies to Claims Between Insurers

In its Complaint, Underwriters asks this Court for a declaration of Kinsale's primary and non-contributory duty to defend and indemnify LMV and LRC Construction as additional insureds, as well as a money judgment for the defense costs that Underwriters has already incurred in the underlying personal injury action. (Compl. ¶¶ 28-37). The parties disagree on whether those claims reflect Underwriters' attempt to benefit directly from the Kinsale Policy, or whether they merely seek to exploit the contractual relationship between Kinsale and the additional insureds in an indirect manner. Each party cites cases that are favorable to its position, reflecting a lack of consensus among courts within this Circuit on this issue.

According to Kinsale, Underwriters brought direct claims of indemnification and subrogation that exploit the Kinsale Policy itself. Citing *Best Concrete Mix Corp.* v. *Lloyd's of London Underwriters*, 413 F. Supp. 2d 182 (E.D.N.Y. 2006), Kinsale starts by arguing that "a party seeking to enforce indemnification rights as an additional insured under a policy must be bound by its arbitration clause." (Kinsale Br. 6; *see also* Kinsale Reply 5). In *Best Concrete*, another court in this Circuit concluded that the plaintiff company, which sought to be indemnified by the defendant insurance company as an additional insured under its insurance policy, but which did not sign that policy, "must also be bound by [the policy's] arbitration clause because [the

plaintiff] wishe[d] to avail itself of the protection and direct benefits afforded by the policy." 413 F. Supp. 2d at 184, 187.

Perhaps recognizing that Underwriters does not seek indemnification as an additional insured itself, Kinsale also points to two other cases in this District that discuss the nature of claims between insurance companies with overlapping coverage. (*See* Kinsale Br. 6-7; Kinsale Reply 5-6). First, in *Ohio Security Insurance Co.* v. *Kinsale Insurance Co.*, No. 24 Civ. 149 (PKC), 2024 WL 5135737 (S.D.N.Y. Dec. 17, 2024), one insurance company was estopped from avoiding arbitration of its claims against another insurance company. *Id.* at *5-6. Similar to this case, *Ohio Security* involved a plaintiff insurance company that sought a declaration that the defendant insurance company was obligated to defend and indemnify additional insureds under the defendant's policy, as well as reimbursement of defense costs that the plaintiff had incurred in defending those insureds in an underlying lawsuit. *Id.* at *4. The court in *Ohio Security* explained that the plaintiff's "entitlement to declaratory judgment depend[ed] entirely on the scope of [the defendant's] coverage provisions and whether [the insured entities] qualif[ied] as 'additional insureds' under the [defendant's] terms." *Id.* The court emphasized that the plaintiff's claims were best understood as claims for equitable subrogation, as the plaintiff specifically argued that it was subrogated to the rights of the insureds. *Id.* at *5. In other words, because the plaintiff "assume[d] the contractual relation between [the insured entities] and [the defendant] for its own benefit" and stood in the shoes of the additional insureds, it was directly exploiting the

defendant's insurance policy and must therefore comply with the policy's arbitration provision.  *Id.* at *4-5.

Second, in *Insurance Co. of Greater New York* v. *Kinsale Insurance Co.*, No. 23 Civ. 3577 (JMF), 2023 WL 7736653, at *2-3 (S.D.N.Y. Nov. 15, 2023), a plaintiff insurance company seeking a declaration that its insured qualified as an "additional insured" that was entitled to coverage under the policy of another insurance company was also compelled to arbitrate its dispute.  The court there reasoned that the plaintiff was bound by the arbitration agreement in the defendant's policy because the plaintiff sought to "enforce ... provisions of the [p]olicy against [the defendant]."  *Id.* at *2.  While the court in *Greater New York* did not explicitly invoke subrogation in its reasoning, its citations reflect a general understanding that a non-signatory insurance company can be estopped from avoiding arbitration when it acts as a subrogee standing in the shoes of its insured.  *See id.* (citing, among other cases, *Am. Bureau of Shipping* v. *Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999)).  Here, Kinsale argues that this case is "squarely analogous" to both *Ohio Security* and *Greater New York* because Underwriters seeks a declaration from this Court that its insureds are entitled to coverage as additional insureds under the Kinsale Policy, which in turn "depends entirely on the terms and conditions of the Kinsale Policy."  (Kinsale Reply 6; *see* Kinsale Br. 7).

Underwriters, however, contends that its claims against Kinsale rest on contribution, which exploits the insurance relationship but does not seek a direct benefit from the insurance contract.  (Underwriters Opp. 5-7).

11

Contribution is a "'well-settled principle' that permits 'one party jointly liable on an obligation [that] pays more than its pro rata share [to] … compel the co-obligors to contribute their share of the amount paid.'" *Danaher Corp.* v. *Travelers Indem. Co.,* No. 10 Civ. 121 (JPO), 2014 WL 7008938, at *8 (S.D.N.Y. Dec. 12, 2014) (alteration in original) (quoting *Md. Cas. Co.* v. *W.R. Grace & Co.,* 218 F.3d 204, 210 (2d Cir. 2000)).

In *Danaher*, one insurance company brought a third-party complaint against additional insurers of the same underlying entity and sought to distribute "costs for defending and indemnifying [an underlying lawsuit] to other insurers that provided coverage to [the insured entity] during the relevant timeframe." 2014 WL 7008938, at *1. The court in *Danaher* denied the third-party defendants' motion to compel arbitration, reasoning that the third-party plaintiff's claims "sound[ed] in contribution" and sought "equitable relief to oblige other insurers to pay their share (if any) of defense and indemnification costs arising from the [u]nderlying [c]laims." *Id.* at *8-9. The benefit to the third-party plaintiff was indirect because it exploited the contractual relationship between the additional insurers and the common insured "that may require [the additional insurers] to defend or indemnify [the common insured] against certain claims — which, in turn, may give rise to a contribution claim by [the third-party plaintiff]." *Id.* at *8. Claims for relief between co-insurers, the court concluded, are "not subrogation claims" and "do not arise from contractual undertakings," but are instead "firmly rooted in …

12

the law of contribution." *Id.* at *8-9 (internal quotation marks omitted) (quoting *Md. Cas. Co.*, 218 F.3d at 210-11).

Underwriters also points to *Certain Underwriters at Lloyd's, London* v. *Allied Professionals Insurance Co.*, No. 22 Civ. 14 (WMS) (HKS), 2023 WL 4449570 (W.D.N.Y. July 11, 2023), as "reaffirm[ing] and elaborat[ing] on these principles." (Underwriters Opp. 6). Evaluating almost identical facts to this case, the court there refused to compel arbitration under a "direct benefits estoppel theory." *Allied Pros.*, 2023 WL 4449570, at *9. The court first determined that the plaintiff insurance company sought reimbursement from the defendant insurance company for the plaintiff's defense of an alleged additional insured under the defendant's policy based on "a theory of either contribution or implied indemnification," and not subrogation. *Id.* at *4-5. Traditionally, subrogation claims seek reimbursement from a third-party wrongdoer. *See id.* at *4. The court reasoned that co-insurers cannot bring subrogation claims against each other because neither could be the third-party wrongdoer. *Id.* Furthermore, New York law has long recognized claims between co-insurers as rooted in either contribution or implied indemnification. *Id.* at *5.

Then, the court explained that only "principles of equity allow for a contribution or indemnification claim *because* [the] [p]laintiff has no direct rights under [the defendant's policy]." *Allied Pros.*, 2023 WL 4449570, at *8. Even though the plaintiff sought a declaration of the defendant's primary and non-contributory duty to defend and indemnify the additional insured, the

13

plaintiff could not "actually invoke" the defendant's alleged duties to the additional insured under the defendant's insurance policy, as the defendant's insurance policy did not name the plaintiff as a party or provide any contractual rights to the plaintiff. *Id.* (quoting *Trina Solar US, Inc.* v. *Jasmin Solar Pty Ltd*, 954 F.3d 567, 572 (2d Cir. 2020)).

Underwriters cites *Danaher* and *Allied Professionals* to argue that it is not relying on the contractual rights of LMV and LRC Construction under the Kinsale Policy to support its claims. Rather, Underwriters seeks "equitable contribution arising from Kinsale's failure to satisfy its independent obligations as an insurer of the same risk — obligations that flow from the underlying Fuller-Phoenix contract and the [p]urchase [o]rder, not the Kinsale [P]olicy." (Underwriters Opp. 8).

### 3. Estoppel Does Not Apply Here Because Underwriters Brought Equitable Claims Seeking Indirect Benefits

Upon reviewing the existing case law and the facts of this case, this Court determines that estoppel does not apply because Underwriters brought equitable claims that indirectly exploit the contractual relationship between Kinsale and the additional insureds. While the case law discussed above does not clearly resolve the issue here, the Court finds that the Second Circuit and New York state courts generally characterize claims between insurers as sounding in equitable contribution and implied indemnification rather than in subrogation. Furthermore, viewing the evidence in the light most favorable to the non-moving party — here, Underwriters — the Court believes that there is

14

a genuine dispute over Underwriters' reliance on the Kinsale Policy to make its claims. Therefore, arbitration cannot be compelled.

The Court starts by acknowledging that the cases cited by the parties are either distinguishable or directly conflicting such that they do not readily resolve the issue of arbitration. Together, however, they frame the key question in this case: whether the declaratory judgment and reimbursement requested by Underwriters require this Court to look to the Kinsale Policy itself and resolve its coverage of additional insureds. As *Best Concrete* explained, an additional insured seeking indemnification — that is, the direct benefit of coverage under an insurance policy — is bound by the arbitration agreement in that policy and estopped from avoiding arbitration. 413 F. Supp. 2d at 187. To be sure, *Best Concrete* is distinguishable because Underwriters does not seek indemnification for itself as an additional insured. Rather, Underwriters seeks a declaration that Kinsale must cover LMV and LRC Corporation as additional insureds, and, based on that contractual relationship, reimburse Underwriters for the costs it has expended thus far in the defense of the additional insureds in the underlying lawsuit. Nevertheless, *Best Concrete* seems to suggest that, if an entity stands in the shoes of and is equivalent to the additional insured, then it, too, may be compelled to arbitrate because it seeks the direct benefit of coverage under the relevant insurance policy.

On the one hand, *Ohio Security* and *Greater New York* reached exactly that conclusion by relying on subrogation. The court in *Ohio Security* found that the plaintiff insurance company "assume[d] the contractual relation"

15

between the additional insureds and the defendant insurance company for its own benefit because it brought an equitable subrogation claim. 2024 WL 5135737, at *4. Similarly, the court in *Greater New York* cited subrogation cases to determine that the plaintiff insurer was bound by the arbitration agreement in the defendant insurer's policy because the former sought to "enforce" the coverage of the additional insured against the latter. 2023 WL 7736653, at *2.

On the other hand, *Danaher* and *Allied Professionals* rejected subrogation as a possible theory to support claims between insurers. In *Danaher,* the court explained that claims between co-insurers are rooted in contribution rather than subrogation. 2014 WL 7008938, at *9. And in *Allied Professionals*, the court went even further by emphatically stating that insurers cannot recover from each other based on subrogation because neither could be the third-party wrongdoer. 2023 WL 4449570, at *4.

Here, the facts of the case differ slightly from *Ohio Security* because Underwriters explicitly disavows any equitable subrogation claim (Underwriters Opp. 8-9), and they also diverge from *Danaher* in the sense that Kinsale refuses to agree to the threshold issue of whether it and Underwriters are co-insurers of LMV and LRC Corporation (Kinsale Reply 6). But *Greater New York* and *Allied Professionals* are essentially indistinguishable from this case, and the reasoning in those two cases directly conflicts.

This Court is persuaded that the claims here sound in equitable contribution or implied indemnification, but not in subrogation. It recognizes

16

that there are circumstances in which "an insurer-subrogee stands in the shoes of its insured." *Tencara Shipyard*, 170 F.3d at 353 (quoting *Gibbs* v. *Hawaiian Eugenia Corp.*, 966 F.2d 101, 106 (2d Cir. 1992)).  But those circumstances tend to involve claims against third-party wrongdoers.  *See, e.g., id.* at 351, 353 (compelling the insurer of the owners of a yacht to arbitrate against a ship classification society for overlooking defective design and poor construction in the yacht's classification).  In this case and others involving overlapping coverage, the relationship between insurers is unique.  The Second Circuit in *Maryland Casualty* explained that the doctrine of subrogation does not apply when the insurers "are not seeking reimbursement from a third-party wrongdoer."  218 F.3d at 211; *see also Nat'l Cas. Co.* v. *Vigilant Ins. Co.*, 466 F. Supp. 2d 533, 541-42 (S.D.N.Y. 2006).  Moreover, the relationship between the insurers cannot be contractual "because the contracts entered into are formed between the insurer and the insured, not between two insurance companies." *Md. Cas. Co.*, 218 F.3d at 210.  "Accordingly, whatever rights the insurers have against one another do not arise from contractual undertakings."  *Id.* at 211.

New York state law further confirms that contribution or implied indemnification — both of which are rooted in equity — better describes claims between insurers.  The former "is not founded on nor … arise[s] from contract[,] and only ratable or proportional reimbursement is sought in an action for contribution." *McDermott* v. *City of New York*, 50 N.Y.2d 211, 216 (1980) (internal quotation marks omitted) (quoting *McFall* v. *Compagnie Mar. Belge (Lloyd Royal) S. A.*, 304 N.Y. 314, 327 (1952)).  Implied indemnification also

17

"finds its roots in the principles of equity," as "[i]t is nothing short of simple fairness to recognize that '[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity.'" *Id.* at 216-17 (alteration in original) (quoting Restatement (First) of Restitution § 76 (1937)). Unlike contribution, however, a claim for implied indemnification seeks full and not partial reimbursement. *Id.* at 216. Especially here, where the "claims for payment between co-insurers … are not proportional or ratable, and are based on coverage for the same insured," New York courts have recognized them as "arising under the theory of recovery of implied indemnification." *Tech. Ins. Co., Inc.* v. *Phila. Indemn. Ins. Co.*, 642 F. Supp. 3d 445, 468-69 (S.D.N.Y. 2022) (collecting cases); *see, e.g., Aetna Cas. & Sur. Co.* v. *Merchs. Mut. Ins. Co.*, 435 N.Y.S.2d 125, 127 (3d Dep't 1980) (recognizing a cause of action based on implied indemnification between two insurance companies over the coverage of an additional insured), *abrogated on other grounds by*, *Motor Vehicle Accident Indemnification Corp.* v. *Aetna Cas. & Sur. Co.*, 89 N.Y.2d 214 (1996).

In sum, Underwriters' claims in this case are not for subrogation but for contribution or implied indemnification. Therefore, because Underwriters seeks to indirectly exploit the insurance relationship based on theories of equity, it is not bound by the Kinsale Policy and its arbitration clause.

In addition, on a motion to compel arbitration, this Court must draw reasonable inferences in favor of Underwriters as the non-movant, which presents a genuine issue as to whether this suit is brought under the Kinsale

18

Policy. Underwriters claims that it is "merely enforcing Kinsale's contractual relationship with Phoenix, which required Kinsale to defend and indemnify [LMV and LRC Construction], and which then gave rise to Underwriters' contribution claim against Kinsale" (Underwriters Opp. 6), and that Kinsale's obligations "flow from the underlying Fuller-Phoenix contract and the [p]urchase [o]rder, not the Kinsale [P]olicy" (*id.* at 8). Kinsale disputes the source of Underwriters' claims, instead contending that the "question is whether the Kinsale Policy provides insured or additional insured coverage under the policy, pursuant to the terms of the policy, … [and] not whether Kinsale's insured was required to procure insurance in the underlying contract." (Kinsale Reply 5). Kinsale may be correct, but at this stage, the Court is obliged to view the evidence in the light most favorable to Underwriters to determine the issue of arbitrability.

Indeed, the Court finds that the evidence presented by the parties supports Underwriters' contention — at the very least, it creates a dispute over the source of Underwriters' claims. First and foremost, the purchase order between Fuller Marquise and Phoenix, Kinsale's primary insured, included several insurance requirements, including the delivery of a certificate of insurance to LMV and the inclusion of LMV and LRC Construction as additional insureds. (Alipour Aff., Ex. 1 at 5). Furthermore, while neither party has presented the certificate of insurance as evidence, the Court can reasonably infer from the purchase order that such a certificate was in fact required, made, and delivered. And finally, even the Kinsale Policy itself

19

contained a section on "owners, lessees[,] or contractors" as additional insureds, which section states that coverage applies to those "additional insured … required by a contract or agreement." (Horton Aff., Ex. H at 68). In other words, the Kinsale Policy recognized that other contracts may impact or inform the scope of coverage, thereby adding credence to Underwriters' argument that its claims originate from the purchase order or another contractual relationship outside of the scope of the Kinsale Policy.

Because Underwriters did not sign an agreement to arbitrate, and because estoppel does not apply, the Court finds that the first prong of arbitrability is not met here, and it need not evaluate whether the scope of Kinsale's arbitration agreement covers the claims at issue.

## CONCLUSION

For the foregoing reasons, Kinsale's motion to compel arbitration is DENIED. The parties are ORDERED to submit a joint letter proposing next steps in this case on or before **December 19, 2025**.

The Clerk of Court is directed to terminate the pending motion at docket entry 13.

SO ORDERED.

Dated: December 2, 2025
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

20